OPINION OF THE COURT
William Davis, J.
On June 4,1983, in the City of New York, the defendant, Patrick Darbouze, was arrested and charged, inter alia, with driving while intoxicated, in violation of subdivision 2 of section 1192 of the Vehicle and Traffic Law. At that time, the defendant was taken into custody and submitted • to a breathalyzer test. As a result of the test, the defendant was alleged to have a blood alcohol content of .20%. No effort was made to preserve the original air sample or a second original air sample of the defendant’s breath for his independent testing.
Defendant now moves to suppress the results of the breathalyzer test, based on the contentions that the failure of the People to preserve a sample of defendant’s breath is a violation of subdivision 8 of section 1194 of the Vehicle and Traffic Law, as well as a violation of defendant’s right to due process under the Federal and State Constitutions.
A hearing was ordered, although this relief was not requested by counsel, on the issue of preserving the original air sample. The court is well aware that this is a quickly developing area of the law which merited more substantial review than a mere determination on the pa *655 pers. Inasmuch as the People had already represented that no second original ampoule had been preserved, argument proceeded from that point with counsel commenting on the impact of United States v Bryant (439 F2d 642); whether suppression should apply retroactively, prospectively or even on a delayed basis; the impact on police proceedings; scientific analysis supporting the proposition that preservation of a second ampoule could result in credible evidence introducible at trial.
FINDINGS
There is only one basic issue with respect to this inquiry. That is, do the police have a duty to preserve a sample of the defendant’s breath for his independent testing, and, if they do have such a duty and fail to preserve the sample, must the evidence be suppressed.
It is a settled principle that the People can constitutionally test the blood alcohol content of an individual accused of driving while intoxicated. The controlling statute (Vehicle and Traffic Law, § 1192, subd 2) clearly states that “[n]o person shall operate a motor vehicle while he has .10 of one per centum or more by weight of alcohol in his blood as shown by chemical analysis of his blood, breath, urine or saliva”. Thus, once the chemical test is performed on the accused pursuant to section 1194 of the Vehicle and Traffic Law, a finding that the accused has a blood alcohol content of .10% or more is per se evidence of guilt. There is no substitute for the chemical fest, which is a vital part of the People’s proof. (People v Molina, 121 Misc 2d 483.)
The issue of preservation of evidence was clearly determined by the United States Court of Appeals for the District of Columbia in United States v Bryant (439 F2d 642, supra). Therein the court stated that the fact that certain evidence might be significantly favorable to the accused is enough to bring such cases within constitutional concern. The court went on to say that the purpose of the duty to disclose is not simply to correct an imbalance of advantage, whereby the prosecution may surprise the defense at trial with new evidence; rather, it is also to make the trial a search for truth informed by all relevant material, much of which, because of imbalance in investigative resources, will be exclusively in the hands of the government. (United States v Bryant, supra, at p 648.)
*656 Applying that decision to the present case, it is clear that the results of the breathalyzer test are clearly within the control of the government. In most cases the police officers transport the defendant to the station house and, with the consent of the defendant, take a sample of his breath by passing it through a breathalyzer apparatus. At this time, the defendant is duly informed that by statute the results of the breathalyzer test may, and in all probability will, be used against him. The sample is then destroyed, and the defendant never has a chance to examine it himself or to have others of his choice examine it.
The People argue that there is no duty to preserve the original sample, or a second sample for the defendant’s independent testing, for three reasons. First, it is alleged that subsequent retesting or chemical analysis of the test ampoules, no matter how preserved, provides no acceptable scientific relationship to the accuracy or validity of the original test results (People v Le Pree, 105 Misc 2d 1066, 1071). Second, they allege that the destruction of the evidence provided by the breathalyzer results is not a violation of the United States Constitution since due process requires only the disclosure of pre-existing exculpatory evidence. Additionally, the defendant’s mere allegation that the evidence not disclosed would be favorable to his case does not necessarily establish this fact (People v Rich, 118 Misc 2d 1057). Third, that destruction of the ampoules and their contents was neither malicious nor in bad faith, but rather in conformance with the standard rules and procedures of the police department (People v Le Pree, supra).
As to the first allegation, there presently exists a device known as an “indium field sampling system”, developed by Intoximeters, Inc. The device lists for approximately $300 per unit, and permits a sampling of the defendant’s breath immediately after the breathalyzer. The air sample is crimped in an indium tube and may be preserved for 12 months or more for independent testing; The unit can be used over and over again except for the indium tube itself which preserves a sample of breath. (People v Richter, 102 Misc 2d 285, 294; People v McCabe, Erie County.) Thus, it is clear that the allegation that the sample cannot be preserved is incorrect.
*657 In regard to the second allegation, the court in People v Richter (102 Misc 2d 285, supra) concluded that it is unnecessary to know the exact contents of evidence for the due process requirements of its preservation to apply. It is enough that such material, if presented at trial, would assist in the search for the truth. “ ‘Were Brady and its progeny applicable only when the exact content of the non-disclosed materials was known, the disclosure duty would be an empty promise’.” (People v Richter, supra, at p 289.) If it would appear that the evidence in question might lead a jury to entertain a reasonable doubt as to the defendant’s guilt, then that evidence can be deemed “favorable” to the accused, thus requiring preservation (United States v Bryant, supra).
Finally we examine the concept of good-faith destruction of the evidence. A number of States have already ruled on this issue, reaching the conclusion that regardless of good- or bad-faith destruction, the People are required to preserve a sample of the defendant’s breath for future testing. (See Municipality of Anchorage v Serrano, 649 P2d 256 [Alaska]; Baca v Smith, 124 Ariz 353; People v Hitch, 12 Cal 3d 641; Garcia v District Ct., 197 Col 38; State v Cornelius, 122 NH 925 [recognizing defendant’s due process right to a breath sample for independent analysis]; Vt Stats Ann, tit 23, § 1203, subd [a]; Okla Stats, tit 47, § 752, subd 5 [implementing the breath trapping requirement by statute].)
In New York, the Brighton Town Court, Monroe County, in People v Shepherd (118 Misc 2d 365), stated that where evidence produced by the breathalyzer test cannot be disclosed because of its intentional but nonmalicious destruction by investigative officials, sanctions shall be imposed. As it is now both practical and cost effective for the police to save a sample of defendant’s breath for future scientifically reliable independent analysis, they are required to do so.
We too conclude that this should be the law. Therefore, this court holds that the various police agencies are on notice that they must acquire the most reliable and cost effective breath trapping system available. We acknowledge that retroactive application of this ruling would have *658 a destructive and unwarranted effect on the criminal justice system. Thus, only prospective effect shall be given to this decision (60 days from the date of this decision is deemed reasonable).
Hence, as to the present case, the defendant’s motion for suppression of the results of the breathalyzer test is denied.