OPINION OF THE COURT
John J. Fromer, J.
Defendant has moved for suppression of oral statements and of breathalyzer test results. The People have moved to amend the indictment.
SUPPRESSION
Defendant moves for an order suppressing certain state *667 ments made by him to a State Police officer prior to his arrest, and the results of a certain breathalyzer test administered at the direction of the police. The facts, as developed at the suppression hearing held on July 23, 1985, show the following:
Defendant was the operator of a vehicle stopped by State Police on July 16, 1984 at approximately 3:35 a.m. on State Route 23 in the Town of Catskill, New York. Upon approaching defendant’s vehicle and addressing the defendant the trooper detected a strong odor of alcohol. The trooper requested defendant to exit his vehicle, and as defendant did so the trooper observed that defendant’s eyes were bloodshot. The trooper requested defendant to walk to the front of the car, and as defendant did so the trooper inquired whether defendant had been consuming alcohol. The defendant responded that he had. The defendant was then asked to walk the line on the side of the road as a field sobriety test, which defendant failed. The trooper then placed defendant under arrest for driving while intoxicated, and administered Miranda warnings. The arrest took place at approximately 3:37 a.m. Defendant was transported to the State Police barracks at Cairo, New York, where a breathalyzer test was administered, defendant achieving a score of .20 of 1% blood alcohol content. The uncontroverted testimony of defendant was that while in custody of the State Police he twice requested the administration of a second chemical test to check the results of the breathalyzer test. Beyond indicating to defendant that such a test must be paid for by the defendant, State Police did nothing to accommodate defendant’s request, and indeed defendant was not free to obtain such a test until being released following his arraignment before the Catskill Town Court at approximately 6:30 a.m. on July 16, 1984.
With respect to his statements, defendant argues they should be suppressed as the product of custodial interrogation prior to the administration of Miranda warnings. Based on the holding in Berkemer v McCarty (468 US 420), however, it must be conceded defendant was not in fact "in custody” at the time his statements were uttered, and thus Miranda warnings were not required. No other ground for suppression being advanced, the motion to suppress defendant’s statements is denied.
With respect to test results, defendant argues the results of the breathalyzer test should be held inadmissible due to the denial by the police of defendant’s statutory right to a second chemical test pursuant to Vehicle and Traffic Law § 1194 (8). *668 By the time defendant was released from custody and presumably free to arrange for such a test, more than two hours had passed since the time of his arrest. Defendant’s argument rests on the asserted premise that the results of any test obtained by him after his release would be inadmissible at trial as evidence of his blood alcohol content at time of the alleged offense, as being results of a test obtained not in accordance with the provisions of Vehicle and Traffic Law § 1194. (See, Vehicle and Traffic Law § 1195 [1].)
This analysis ignores the fact that the two-hour period following arrest within which a chemical test must be administered applies by its terms only to tests administered at the direction of the police. The subdivision of the statute which creates the defendant’s right to the second test, Vehicle and Traffic Law § 1194 (8), is silent as to when the test must be allowed. The police have no affirmative duty to arrange for the second test, or to transport defendant to a place where the second test may be performed. (People v Hoats, 102 Misc 2d 386.) The section of the law dealing with admissibility of chemical test results, Vehicle and Traffic Law § 1195, provides only that such results shall be admissible in evidence if the test was administered pursuant to the provisions of Vehicle and Traffic Law § 1194, which reference must be taken to include all of the provisions of that section.
Cases cited by defendant for the proposition that a chemical test must be performed within two hours after the arrest in order that its results be admissible refer only to tests administered at the direction of the police. The emphasis laid by those courts upon the qualifying effect of the two-hour limitation seems designed solely to bring out the point that its purpose was not to afford defendants the luxury of stalling performance of the test for the statutory period before finally consenting to its administration. (Matter of White v Melton, 60 AD2d 1000; Matter of Donahue v Tofany, 33 AD2d 590, 591.)
The purpose of the two-hour limitation is to impose an arbitrary standard of relevance on chemical test results sought to be used by the People as a basis for incriminating a defendant. Principles of due process as well as the plain language of Vehicle and Traffic Law § 1195 require that the results of a chemical test obtained by a defendant pursuant to Vehicle and Traffic Law § 1194 (8) be admissible on the question of his intoxication at the time of the alleged offense without regard to the arbitrary two-hour time period imposed on the People’s tests, providing only that defendant’s test is *669 performed promptly enough after the alleged offense that its results are still relevant and of some probative value. This determination can only be made on a case-by-case basis, considering among other factors the length of the delay, the subdivision of Vehicle and Traffic Law § 1192 with which defendant stands charged, the results of the People’s tests, and the results of the test obtained by defendant.
In this case no second test was obtained by defendant upon his release from custody approximately three hours after his arrest. Had such a test been obtained even several hours after the alleged offense, it is likely that its results would have been relevant and admissible, given the 0.20% blood alcohol content results indicated by the breathalyzer test. It follows that defendant was not actually prevented from obtaining a relevant second chemical test pursuant to Vehicle and Traffic Law § 1194 (8), and the People are therefore not precluded on this basis from introducing the breathalyzer test results into evidence at trial.
Defendant also challenges the admissibility of the breathalyzer test results on the ground that the People’s failure to preserve a sample of defendant’s breath and the ampoules used in administering the test denies the defendant due process of law. (Citing People v Darbouze, 122 Misc 2d 654; People v Molina, 121 Misc 2d 483.)
Such considerations, however, have been held to go only to the weight and credibility of such test results, not to their admissibility, and the failure to retain such collateral evidence creates no constitutional impediment to admission of the breathalyzer test results. (California v Trombetta, 467 US 479; People v Torres, 125 Misc 2d 78; People v Romeo, 122 Misc 2d 637.)
The motion to suppress the breathalyzer test results is denied.
AMENDMENT OF THE INDICTMENT
The court has inspected the Grand Jury minutes in this case. Evidence of both common-law and chemical theories of intoxication were presented and the Grand Jury was instructed on the law applicable to both types of offenses. The court has no record or means of reviewing the actual decision of the Grand Jury other than the indictment prepared by the District Attorney’s office and signed by the foreman. Clearly this is technically defective in that it refers to both Vehicle *670 and Traffic Law § 1192 (2) and (5) (chemical) and to Vehicle and Traffic Law § 1192 (3) and (5) (common law) as one offense, but then proceeds to state as a factual basis therefor only the common-law offense.
The offense is driving while intoxicated as a felony under Vehicle and Traffic Law § 1192 and should the defendant be found guilty by proof under subdivisions (3) and (5) or under subdivisions (2) and (5) or both there are technically two offenses but only concurrent ones, and the People should not be precluded from offering proof under either subdivision as long as the defendant is apprised of the charges the People will seek to prove and the amendment does not unduly prejudice his defense. In fact much of defendant’s pretrial activity has been addressed to the chemical tests.
There is ample time left before the anticipated trial date in October 1985, and all pretrial hearings have offered ample review of the alleged chemical tests.
The motion to amend is granted.